**Susanna CIPOLONE and Michael Cipolone, her husband**

v.

**PORT AUTHORITY TRANSIT SYSTEM OF ALLEGHENY COUNTY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 16, 1995.

Decided Nov. 15, 1995.

Terrance R. Henne, for appellant.

Lori D. Mendicino, for appellees.

Before PELLEGRINI and NEWMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Port Authority Transit System of Allegheny County (PAT) appeals from an order of the Court of Common Pleas of Allegheny County that granted a new trial to Susanna Cipolone (Susanna) and Michael Cipolone (Michael), her husband.

On August 23, 1991, while stopped in preparation for making a left turn from Fifth Avenue onto Moutrie Street in the City of Pittsburgh, the motor vehicle operated by Susanna was struck from behind by a PAT bus. Susanna and Michael filed a complaint against PAT alleging that she sustained various personal injuries[1] as the result of the negligent operation of the PAT bus.

At a trial, both parties presented medical testimony regarding the nature, extent, and degree of Susanna's injuries. Dennis J. Courtney, M.D. (Dr. Courtney), Susanna's treating physician, testified that she suffers from myofascial pain syndrome (MPS)[2], which was caused by the August 23, 1991 bus accident. (R.R. 439–440). Dr. Courtney further testified that while there is no cure for MPS, a disease which Susanna will have for the rest of her life, the pain which MPS produces can be managed through treatment. (R.R. 441–442). Robert M. Yanchus, M.D. (Dr. Yanchus) testified on behalf of PAT that as a result of the 1991 bus accident, Susanna

---

1. Susanna averred that her injuries included the following: 1) myofacial pain syndrome; 2) myalgia; 3) myositis; 4) low back pain; 5) neck pain; 6) thoracic pain; 7) hyperesthesia—facial numbness; 8) neurological injuries; 9) acute cervical and lumbar strain; 10) aggravation of a pre-existing injury; 11) degenerative disc disease; 12) soft-tissue injury to the cervical and lumbar spine; and 13) other serious and severe injuries. (R.R. 2).

2. Dr. Courtney described MPS as a disease which occurs as the result of microscopic rips of muscle tissue that leads to the formation of bumps which act as trigger points for pain. (R.R. 439–440).

only sustained a "whiplash"[3] injury. (R.R. 547). Dr. Yanchus further testified, however, that whiplash injuries usually resolve in a couple of months and that when he examined Susanna on May 7, 1993, she showed no objective signs of physical impairment. (R.R. 547–548). Thus, while Drs. Courtney and Yanchus disagreed as to the nature, extent, and degree of Susanna's injuries, there was no dispute Susanna was in fact injured as a result of the bus accident.

Following instructions from the trial court, the jury retired to deliberate. During the course of said deliberations, the jury sent to the trial court a hand-written note which provided as follows:

> If we find negligence, must we give money damages?
>
> Arthur J. Phillcott
>
> Clarify the definition of negligence.

In response thereto and in open court, the trial court further charged the jury, in pertinent part[4], as follows:

> If you find negligence, you must also consider legal cause which means that in addition to negligence, the negligence had to be a substantial factor in causing the injury to the wife-plaintiff.
>
> *In addition, if you determine that the defendant driver was negligent and you further find that such negligence was a substantial factor in causing the injury to the wife-plaintiff, you must then find in favor of the plaintiffs; and you then must find an amount of money damages which you believe will fairly and adequately compensate the plaintiffs for all of the physical and financial injury that they have sustained.*
>
> . . . .
>
> *If you find that law negligent (sic), and you further find that such negligence was a substantial factor in causing the injury to the wife-plaintiff, you must then award money damages for all of the physical and financial injuries that the plaintiffs have sustained.* (Emphasis ours.)

(R.R. 401–404). The jury resumed deliberations and then rendered the following verdict:

> AND NOW, to-wit, this 25th day of March, 1994, the Jury empanelled (sic) in the above entitled case, finds the Port Authority Transit System of Allegheny County guilty of negligence. However, we do not have confidence the accident in question, Aug. '91, led directly to Mrs. Cipolone's injuries. Damages, none.

(R.R. 576).

Susanna and Michael filed a motion for post-trial relief, in the form of a new trial as to the issue of damages only, on the basis that the verdict is against the weight of the evidence in as much as the record clearly contains unequivocal testimony from both Drs. Courtney and Yanchus that Susanna was injured as a result of the bus accident. (R.R. 577–580). The trial court granted the post-trial relief motion and ordered a new trial. In support thereof, the trial court filed an opinion which stated, in pertinent part, as follows:

> The wife Plaintiff's treating physician was called as a witness and testified as to the injuries. The Defendant presented rebuttal medical evidence of their examining physician, who confirmed injury in this accident but disagreed with Plaintiff's expert as to their severity. Under these circumstances the failure of the jury to award any damages to the wife Plaintiff require (sic) the granting of a new trial. *Lupkin v. Sternick*, [431 Pa.Super.Ct. 300] 636 A.2d 661 (Pa.Super 1994).[5]

(R.R. 509).

On appeal to this Court[6], PAT raises the following question:

> Whether the trial court erred by granting Plaintiffs' motion for a new trial when

---

**3.** Dr. Yanchus described "whiplash" as a cervical sprain/soft tissue injury involving the muscles and ligaments of the neck. (R.R. 547).

**4.** The trial court also again defined for the jury the legal term negligence.

**5.** In *Lupkin v. Sternick,* 431 Pa.Superior Ct. 300, 636 A.2d 661 (1994), the Superior Court held

that a new trial was properly ordered because the jury was not free to award zero damages where there was obvious injury. *See also Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995).

**6.** Our standard for reviewing a trial court's decision to grant a new trial is limited to those reasons upon which the trial court relied. *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 625 A.2d

Plaintiffs waived their right to appeal by failing to object to the verdict before the jury was discharged? [7]

In support thereof, PAT asserts that this case is controlled directly by the Superior Court's decision in *Picca v. Kriner*, 435 Pa.Superior Ct. 297, 645 A.2d 868, *petition for allowance of appeal denied*, 539 Pa. 653, 651 A.2d 540 (1994).[8] *Picca*, however, is distinguishable from the case before us in that the instant matter does not claim that the jury verdict was ambiguous and therefore flawed on its face, but rather that the verdict was contrary to the weight of the evidence. Additionally, the *Picca* court's statement that the waiver rule that was applied by our Supreme Court in *Williams v. Southeastern Pennsylvania Transportation Authority*, 534 Pa. 467, 633 A.2d 1090 (1993)[9] should also be applied whenever the jury returns a verdict which is objectionable for any reason is dicta. *Picca*, 435 Pa.Superior Ct. at 303, 645 A.2d at 871. The Superior Court's sole support for this proposition was a plurality decision in *Curran v. Greate Bay Hotel and Casino*, 434 Pa.Superior Ct. 368, 643 A.2d 687, *petition for allowance of appeal denied*, 539 Pa. 678, 652 A.2d 1323 (1994); however, *Curran* does not represent precedent on the issue of waiver [10] and for the above mentioned reasons *Picca* and the other cases relied upon by PAT are not controlling herein. *See Fillmore v. Hill*, —— Pa.Superior Ct. ——, 665 A.2d 514 (1995) (where a verdict is problematic, but not inconsistent, a party's failure to object to the verdict prior to the jury's dismissal by the trial court judge does not result in the issue's waiver); *Henery v. Shadle*, 443 Pa.Superior Ct. 331, 661 A.2d 439 (1995) (application of the *Picca* waiver rule is more prudently restricted to verdicts of obvious inconsistency and clear, certain irrationality).

The trial court herein did not address the question of waiver, which was raised by PAT for the first time in its reply to the motion for post trial relief, because it had concluded that the verdict was contrary to the weight of the evidence.[11] There is no dispute that the verdict in this matter is consistent and in no way flawed on its face. The issue then is whether or not Susanna and Michael were required to object to the jury's award of no damages prior to the recording of the verdict in order to avoid waiver of said issue where the weight of the evidence established that Susanna was in fact injured as a result of the

---

1181 (1993). Furthermore, we will not disturb the decision of the trial court absent an abuse of discretion or error of law. *Id.*

7. PAT also raised the following question: Whether the jury's verdict is within the province of the jury and is consistent? In support thereof, PAT asserts that the trial court ruled that the verdict was inconsistent. However, since the trial court never made such a determination, we need not address PAT's contention in this regard.

8. In *Picca*, the appellants waived their right to request a new trial by failing to object during the trial to an inconsistent verdict which resulted from the jury's ambiguous answer to an overly broad interrogatory.

9. In *Williams*, the plaintiff was a passenger on a SEPTA trolley that collided with an unmarked car driven by a Philadelphia police officer. At the conclusion of the trial, the court provided the jury with interrogatories to assist in rendering a verdict. In response to the interrogatories, the jury found that the negligence of the City of Philadelphia was a substantial factor in causing William's accident and injury; the jury further found that the negligence of SEPTA was not a substantial factor in causing the same. The jury then, nevertheless, attributed the causal negligence as follows: seventy-five percent (75%) to the City and twenty-five percent (25%) to SEPTA. In her post-trial motions seeking judgment in her favor against SEPTA or a new trial, Williams raised the issue of the jury's inconsistent findings. The Supreme Court held that Williams waived any right to a new trial because she failed to object to the inconsistency of the jury's answers to the interrogatories when the verdict was rendered. *Williams*, 534 Pa. at 477–478, 633 A.2d at 1095. The Supreme Court determined that because the issue was not preserved at trial, and was instead raised for the first time in post-trial motions, it was thereby waived. *Id. citing Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). It is important to note, however, that the holding in *Williams* is limited only to cases involving inconsistent verdicts.

10. *See McDermott v. Biddle*, 436 Pa.Superior Ct. 94, ft. nt. 8 at 115, 647 A.2d 514, ft. nt. 8 at 524 (*petition for allowance of appeal filed* at 504 E.Alloc.Dckt.1994).

11. The decision of the Superior Court in *Lupkin*, 431 Pa.Superior Ct. 300, 636 A.2d 661 (1994), which was the basis of the trial court's decision, did not address the issue of waiver.

accident. In *Rozanc v. Urbany,* 444 Pa.Superior Ct. 645, 664 A.2d 619 (1995)[12], the Superior Court held that where the verdict is contrary to the weight of the evidence, a party is not required to lodge an objection prior to the dismissal of the jury in order to prevent waiver of said issue. As was the case in *Rozanc*[13], the basis for the post-trial relief motion herein is not that the verdict is inconsistent or flawed on its face, but rather that it is contrary to the weight of the evidence in as much as the jury awarded no damages despite the testimony of medical witnesses from both parties that Susanna did suffer an injury in the accident.

Accordingly, the order of the trial court granting the post-trial relief motion and ordering a new trial will be affirmed.

### ORDER

AND NOW, this 15th day of November, 1995, the order of the Court of Common Pleas of Allegheny County, dated June 22, 1994, is affirmed.

---

**12.** The facts in *Rozanc* are very similar to facts in this case. While stopped at the end of an exit ramp of I–70 in Washington, Pa. in preparation to merge with traffic on West Chestnut Street, the vehicle operated by Rozanc was struck from behind by a vehicle operated by Urbany. Rozanc alleged various injuries as the result of the accident, including cervical sprain or strain. At the trial, the expert medical witness for the defense testified that as a result of the accident, Rozanc suffered an injury in the form of a strain of the muscles and ligaments of her neck. The trial court concluded that this defense testimony coupled with Rozanc's own testimony about her injuries and that of her treating physician who described injuries to her neck and shoulder, constituted uncontradicted evidence that Rozanc suffered *some* injuries as a result of the accident.

**13.** Among the claims raised by the plaintiffs in *Rozanc* is that the jury verdict was against the weight of the evidence since the evidence was uncontradicted that the wife-plaintiff suffered some injury in the accident.